GEORGE A. JOHNSTON et al., Appellees, v. T. P. ROBERTS, Trustee, et al., Appellants.

No. 44995.

FEBRUARY 18, 1941.

Kenneth H. Davenport, for appellants.

Healey & Reynolds and Thos. E. Mullin, for appellee.

OLIVER, J.—This is an action in equity by plaintiff-appellee, Depositors' Trustees of the First National Bank in Creston, Iowa, to establish plaintiff's share in a certain trust and to recover divi-

dends allegedly due thereon, against T. P. Roberts, trustee, and all other share owners. From judgment and decree for plaintiff, defendants appeal.

F. E. Agnew, to finance the construction of a business building in Creston, in 1920, made a trust deed thereto to secure $75,-000 in 10-year, 7 percent coupon bonds, $63,000 of which were actually issued during a period of about two years. The Farmers & Merchants Bank was trustee in the trust deed. Some bonds were sold for cash while $37,000 of them were pledged, in different amounts, to three banks (one of said banks being a defendant herein) as collateral security for indebtedness incurred by Agnew in financing said building. The First National Bank, appellee's predecessor in interest, originally received $17,000 in bonds as collateral for an indebtedness of equal amount. Shortly afterwards $3,000 of said bonds were returned to the trustee Farmers & Merchants Savings Bank, and issued to others.

Later $6,000 of the balance of the indebtedness owed the First National Bank was transferred to the Corn Exchange National Bank of Omaha, and subsequently paid by Agnew, but according to the evidence all the collateral bonds were, at all times, held by the First National Bank. Thereafter, in 1928, Agnew made a new pledge of the $14,000 in bonds to the First National Bank as collateral for his indebtedness and afterwards, on May 15, 1932, gave the bank the $8,000 note hereinafter mentioned and again pledged the $14,000 of bonds to secure said note. The First National Bank had, from time to time as the same matured, turned over to Agnew the interest coupons on the $14,000 of bonds. Interest on the notes was paid by Agnew to the First National Bank. In 1930, the maturity of the bond issue was extended.

On February 8, 1933, the First National Bank was reorganized, and in connection therewith the Agnew $8,000 note with the $14,000 in pledged bonds passed to appellee-trustees for the depositors. However, the new First National Bank performed most of the duties of the depositors' trust and had a contingent interest in its assets.

Shortly prior to that time default in taxes on the Agnew

building and interest on the bonds had caused several meetings of the Agnew bondholders. Mr. Jensen testified that in a meeting held January 5, 1933, in the Farmers & Merchants Bank, trustee in the trust deed, the amount of bonds held by the First National Bank was questioned by E. N. Dougherty, president of said Farmers & Merchants Bank, but the question was disposed of by the production of the $14,000 in bonds. There was no further dispute and the minutes of that meeting show the First National Bank as holding $14,000 in bonds as collateral security. Appellant Roberts was chairman of that meeting, and Mr. Agnew was present. The meeting appointed a Bondholders' Committee with authority to foreclose the trust deed or secure title to the real estate and to protect the property and the bondholders, etc., subject to approval of 80 percent of the bonds.

On March 10, 1933, the bondholders decided prompt action was imperative to prevent Agnew assigning the rents, and a meeting was held in Attorney McEniry's office, at which the necessity of the approval of 80 percent of the bonds was discussed and Mr. Jensen, representing the First National Bank "polled" this $14,000 in bonds, which brought the percentage of bonds represented to the required 80 percent. No objection to appellee's bonds was made at that meeting. Appellant Roberts was elected chairman of the Bondholders' Committee. The Farmers & Merchants Bank, original trustee in the trust deed, was then in receivership and no successor trustee had been appointed. McEniry was instructed to institute immediate foreclosure. Later in this same day Jensen, acting for appellee, sold the $14,000 in pledged bonds and the same were bid in for appellee by Jensen for $7,700, which was slightly less than the balance due on the Agnew note. Jensen testified the sale price was all the bonds were worth and that one reason for the sale at that time was to bring the number of bonds joining in the petition to 80 percent so action could be started immediately.

The next day McEniry instituted the foreclosure suit against Agnew and wife, the plaintiffs being appellee and Roberts, and most of the other appellants, "for themselves and other owners of bonds" who may join in this cause. Bonds listed in the petition as owned by respective plaintiffs included "The First Na-

tional Bank in Creston $14,000.00.'' McEniry testified that either before or during the foreclosure suit he specifically referred to the fact that there had been a dispute over the amount of bonds held by the First National Bank and told the other bondholders that he was retained by the bank and if there was any conflict of interests he could not represent the others. ''It was finally agreed that the bank owned $14,000.00 in bonds and I was authorized to go ahead.''

Shortly after the suit was instituted negotiations commenced which resulted in a stipulation of settlement between the parties to the suit, approved by all the bondholders, providing in part that Agnew should convey the property to Roberts, as trustee for the owners of the bonds, proportionate to their respective holdings, and the suit should be dismissed with prejudice. The suit was dismissed April 10, 1933. On June 30, 1933, Roberts secured the deed and executed a declaration of trust stating in part that there were outstanding bonds aggregating $63,000 for whose benefit he held the property. Mr. McEniry testified Mr. Roberts furnished the information relative to the outstanding bonds used in preparing this declaration of trust. A year later Roberts, as trustee, started paying dividends to the bondholders but paid appellee dividends on a share represented by $8,000 of bonds only. Appellee made repeated demands for payments on its full share and later instituted this suit.

Mr. Roberts testified he had previously understood that only $56,000 in bonds were outstanding; that on January 5, 1933, Mr. Jensen had the $14,000 of bonds brought to the bondholders' meeting for inspection and that the minutes (which showed appellee holding $14,000 in bonds as collateral) were correct; that a lease made by Agnew on January 29, 1930, stated the encumbrance on the property was $56,000; that at the meeting of bondholders, on January 5, 1933, Mr. Agnew claimed he had paid off $6,000 of this $14,000 in bonds; that after Roberts took title as trustee he talked to Agnew, who said this $6,000 in bonds had been paid; that he then talked to Mr. Tom Dougherty, an officer of the defunct Farmers & Merchants Bank, trustee, who told him said trustee had never recognized these bonds; that Roberts did not want to ''stick my neck out and have somebody sue me'';

that he talked to some of the other bondholders and they objected to honoring the $6,000 in bonds; that the books of the defunct trustee bank show $63,000 in bonds outstanding; that the value of the property is in the neighborhood of $48,000 without deduction for depreciation; that real estate values in Creston are low and the property might not bring $48,000, if put up for sale. Mr. Agnew testified the president of the First National Bank had told him they carried the bonds only to protect them on the face of the note they had. Mr. Tom Dougherty testified that after Agnew told him he had paid off the $6,000 to the Corn Exchange National Bank, none of the interest coupons on those bonds were honored and that he told the First National Bank they would not pay these bonds.

The parties agree that the total outstanding bonds now actually aggregate $62,000 instead of the $63,000 figure shown in the records of the original trustee, the foreclosure petition and the declaration of trust executed by appellant Roberts. This discrepancy in figures is apparent only and is due to the fact that $1,000 of the bonds held by the defunct Farmers & Merchants Bank were subsequently offset by the receiver of that bank against a deposit of money belonging to the bondholders.

At this point it should be noted that Agnew is not a party to this litigation. Neither his rights in the bonds or their proceeds nor his title to the property conveyed by him to the trustee is here directly involved. The issue here is between appellee as owner of a share in the property against the other owners of shares and the trustee holding title for all, to establish the size of appellee's share in the common trust property and to enforce appellee's rights accordingly.

Appellants plead that the bonds, as originally issued, and the pledge and the sale thereunder were irregular and invalid. They deny the right of appellee to participate in the mortgaged property upon the basis of the $14,000 in bonds and contend such share should be figured upon the basis of $8,000 in bonds. Their position is that appellee's interest in the property is only 8/56 and not 14/62 as claimed by appellee.

Appellee's reply to appellants' answers denied such factual allegations as were inconsistent with the petition, denied the cor-

rectness of appellants' conclusions, and in addition plead waiver and estoppel based upon the dealings and agreements of the parties in connection with the foreclosure suit, the resulting settlement and the trust deed.

I. The decree held appellee was entitled to a share in the trust property and dividends based upon $14,000 in bonds. This holding is amply justified by the record. The acts of the trustee in continuously paying dividends to appellee (even during the pendency of this suit) upon a share represented by some of the $14,000 in bonds is hardly consistent with the contention of appellants that all of said bonds, as originally issued, and the pledge and the sale thereunder were irregular. That none of said $14,000 in bonds had been paid and all were outstanding is, we think, sufficiently shown by the acts of Agnew, the maker of the bonds and owner of the property, in thereafter pledging the same in 1928 and again in 1932. At the January 5, 1933, meeting of the bondholders in the Farmers & Merchants Bank, trustee, the contention the bonds had been paid was suggested by Agnew as well as by the president of the trustee bank. At the later meeting, in which the bondholders decided to institute foreclosure, appellee was permitted to vote the $14,000 in bonds which brought the total representation up to the 80 percent thought necessary. During the pendency of the foreclosure suit, Attorney McEniry again called the matter to the attention of the other bondholders and told them his first duty was to appellee; that he could not represent them if there was a controversy upon this proposition. The bondholders instructed him to proceed with the litigation. The written minutes of the January 5th meeting show appellee holding $14,000 in bonds, the joint petition in foreclosure shows $63,000 in bonds outstanding and appellee owning $14,000 and the declaration of trust shows $63,000 in bonds outstanding.

The facts and circumstances in this case dispense with the necessity of considering in detail each of the alleged defects in appellee's bonds or its title thereto. It is clearly and convincingly shown by the record that, with knowledge of the situation, appellants voluntarily and intentionally relinquished their right to object to the status of the bonds or appellee's rights therein

and inferentially agreed said bonds were entitled to participate in the foreclosure and to receive a 14/62 share in the trust property. Moreover, it was upon the premise that the attorney (recognizing his primary obligation in case there was a conflict of interests between appellee and the other bondholders) proceeded with the foreclosure and consummated the settlement by which the bonds were exchanged for the real estate. The recital in the declaration of trust that "there are outstanding bonds aggregating $63,000" necessarily includes the $14,000 in bonds held by appellee. There is no contention that this statement was an error or oversight. Nor is there substantial conflict as to other controlling facts and circumstances.

Appellants contend the decree of the trial court gives appellee an inequitable advantage over them. Obviously, appellee had more security for its debt than bonds less in value would have afforded. But that is no valid reason for requiring it to share the loss of investors or creditors whose obligations were secured by relatively less bonds. Incidentally the record shows the price paid by appellee for the pledged bonds was not less than their value at that time and appellants' evidence shows that at the time of trial the value of the real estate was substantially less than $62,000.

We conclude the decree correctly fixed appellee's interest in the trust property at 14/62 thereof and properly allowed recovery for unpaid dividends based thereon.

II. The decree ordered the trustee to pay appellee $1,500 out of the trust funds. Plaintiff has cross-appealed from the refusal to allow interest on the withheld payments from the respective dates such payments were made to other share owners. The original petition prayed judgment for $900, together with interest thereon on the several payments due plaintiff. Before the trial further dividends were paid by the trustee upon the shares represented by the other bonds, and the petition was amended to increase the demand by $600 or a total of $1,500 for which judgment was asked (without specific demand for interest on each unpaid dividend from its date) and for general equitable relief.

In an action in equity it appears interest may be discretionar-

ily allowed though not claimed in the pleadings. Robbins v. Selby, 144 Iowa 407, 121 N. W. 674; Young v. Young, 179 Iowa 1259, 1264, 162 N. W. 617, 618. In this case we have concluded to allow interest at the rate of 5 percent per annum from the date the action was commenced on the amount then owing and interest on dividends subsequently withheld from the respective dates said dividends were declared by the trustee. The decree is modified accordingly.

Appellants' motion to strike the affidavit in appellee's amendment to additional abstract of record is sustained.—Modified and affirmed.

HALE, C. J., and STIGER, SAGER, BLISS, MILLER, and WENNERSTRUM, JJ., concur.